16-3606, Slide Options LLC et al. v. Local 1108 International Brotherhood of Teamsters et al. Oral argument not to exceed 15 minutes per side. Mr. Harrison for the defendants. Good morning. I'd like to reserve three minutes for rebuttal please. That's fine. My name is Chris Harrison and I'm with Ogletree Deacons. I'm here on behalf of the appellants in this case. This case involves the Railway Labor Act and it's probably not something this court sees very often. It does come up from time to time and it's kind of a The overarching principle of the Railway Labor Act is that federal courts don't get involved in the disputes between the parties and the labor relations between the parties. The federal courts stay out of it and they don't decide the issues. Most disputes under the Railway Labor Act either fall under the category of major disputes or minor disputes. It doesn't mean they're big or small issues. It essentially means what kind of a dispute is it. For a minor dispute, and this is Conrail from the United States Supreme Court ruling also followed this. A minor dispute is, is there an agreement or something in place that involves that interpretation? Is there an arguable basis somewhere in the CBA or either in its implied terms that covers this dispute? And if there's some arguable basis and that's a very broad look, I mean if there's any way to find it to be a minor dispute, the courts have said it should be a minor dispute. So that's the default position. Here, it seems that the opinion of the district court moved toward major dispute in a couple ways. One, I'm wondering about, is it correct to say, was the district court correct to say that negotiations now with the formerly non-union FlexJets converts quite a bit of this into a major dispute? No, because this is a minor dispute. Should we say what we're talking about with that pronoun, which is a minor dispute? Okay, so let's first talk about the, there's kind of a couple of different issues. The first is the integrated seniority list. So Judge Gwynne sort of bypassed, the Conrail analysis said you first look at the CBA in place that would apply to the situation in any way and find out whether there's an arguable basis that applies to the situation. There is a CBA at flight options and it dictates under 1.5C1 how the process is to go. It's a pretty detailed process. It also sets some condition precedent for what's required. Process for the merging the seniority list. Of the two, both sides. So it's not a major dispute because you're not, it's right there in that CBA. You're not negotiating for something new. Something new. Right. The list itself in the end may be something new, but ultimately we're talking about the process. And both sides agreed that the process is laid out. Nobody's arguing there's some different process or we're in negotiations to change the process. So on what basis did you invoke the court's jurisdiction? So we came there and we were the ones that first brought this suit because McCaskill Bond is a fairly new statute. There's not much case law on it. And there was a question about what is the carrier's obligation under McCaskill Bond. Are we supposed to be a participant in this under McCaskill Bond? We didn't ask for an interpretation of the CBA. We were asking the court to interpret federal law. And what would you expect? What would materialize from the district court that would fall within that realm and keep the district court out of anything else? So, yeah, we came to the district court for a very narrow issue. I know you say that, but I'm wondering how you envisioned. What was the court supposed to do? If the court reacted in the way that you had hoped, what would it – I thought that the question was fair and – is whatever fair and equitable? No. Okay. That was not it. All we were going to the court over was the process, whether or not the carrier has a right to participate in the process under McCaskill Bond. Okay. Just to interpret the new McCaskill Bond. Correct. And isn't it clear in the statute? That's what I thought. It says in the statute that the carrier – Why did you need a court to declare something? Well, we thought it was the appropriate venue to go to because it's a federal law. And ignore the contract. Ignore the fact that there's also a contractual provision. So we actually said to the court, look, all we want is an interpretation of federal law. We understand we are going back to arbitrate this under the contract. So we weren't asking for the court to decide the ultimate issue. Basically, just a small piece of it on the front end. That was it. And the court sort of went on and went much further than that, ultimately. So the integrated seniority list, ultimately the process, is set out in the 2010 Flight Options CBA. And the argument in a lot of this dispute is over what this means, what it requires, what conditions of precedent are there. And so that's clearly a minor dispute. One of the issues is the union says the carrier has – the union took a position that the carrier has no right to be part of this process. Okay, what's a minor dispute? A minor dispute is when the union and the carrier are negotiating over something new. And they're trying to come to a new agreement. That's what a major dispute is, right? So if the union says the carrier has no right to be a part of this at all, how is that a major dispute? Because we're not negotiating anything. We're not even – the union's arguing that we don't have a right to be there or do anything at all. Okay, so your argument is that this whole mess should go back to arbitration. Let an arbitrator decide whether the union has an obligation to involve the owners. And whether the process complied with the CBA. And then ultimately there would be an arbitration, and it could all be done as one perhaps, but ultimately whether the list is fair and equitable. So when they counterclaimed for arbitration, why didn't you just agree? They counterclaimed for a lot of other things as well. I mean, we could have – I guess we could have potentially agreed, but there were a lot of other things thrown at us. They were asking for attorney's fees and a bunch of other things. And there were some attempts to come at resolution, but those were never successful. So they threw a bunch of things. We went in for a very narrow issue. They threw ten things at the wall and sort of went off on a bunch of other issues as well. Right, but when you went in, I could be mistaken, so maybe I should phrase it more of a question. When you went in and asked for relief, one of the things you were asking for – well, was one of the things you were asking for, for the court to order arbitration? Yes. Actually, and I think this is worth bringing up, both sides in their pleadings went in asking for arbitration. Neither side asked Judge Gwinn to decide whether this list was fair and equitable. Both sides went in to say – because if it's a major dispute, what the judge should do is not weigh in on the dispute and decide whether it's right, who's right or wrong. That's not what federal courts are for. If it's a minor dispute, what they say is, I'm going to enjoin the status quo and you guys go back and negotiate. Either if it's a major dispute, you go negotiate and go through the process of the Railway Labor Act. If it's a minor dispute, you go arbitrate. Federal courts, and what Judge Gwinn sort of continued to do in this case – Wait a minute, let's stick with what you asked for. Okay, we asked – I think Judge White's focused upon that, as am I. You asked for a declaratory judgment. We did. What was the court to declare? I still want to know, considering what you – why you invoked the jurisdiction of a court. We asked that the IBT and the representatives collectively bargain with us over this list. I didn't think that's what it said at all. It's in paragraph one of our complaint, paragraph one. I thought you were having the court take on a legal issue about the McCaskey – Interpreting McCaskey bond. And we were saying under McCaskey bond, we have a right to have a seat at the table. We were asking the court under McCaskey bond to declare that – To give you a seat at the table. Correct. Which would it be, a minor or a major dispute? It'd be – well, it's a good question. And this one gets a little bit tricky. I would say the issue under McCaskey bond and both – it's covered by the CBA as well. And there's a couple of different ways you can deal with – McCaskey bond kind of has its own set of procedures to resolve it. You go through the section 13 arbitration through Allegheny-Mulholland. Saying that you asked for arbitration of the ISL is different from saying that you wanted the issue arbitrated. If this is a minor dispute over the meaning of the CBA, then that would be something that would be arbitrated. And the question would be, does the CBA, including any references to the statute, require arbitration of the ISL? That's different from saying to the court, tell them to arbitrate the ISL. So the union essentially refused to include us or arbitrate or do anything over our participation. I understand that. So we went in under – we couldn't come into the court and say under the CBA order, arbitration under the system board. That essentially would be a minor dispute. I know. But you could have arbitrated whether your participation is required. That's what we were – we were seeking a federal court order to compel the union to arbitrate that issue. No, you weren't. You were seeking a federal court order to compel them to arbitrate over the ISL. With you. An order that was going to compel them to permit your entry into the process of forming the ISL. We first asked that the IBT and the representatives must collectively – a determination that we must collectively bargain with the carriers for a fair and equitable seniority list. So the first thing we asked for is that we be allowed to participate in the collective bargaining. The union refused to allow us to participate in the collective bargaining over this issue. And your argument was that the law required you to ensure that this was fair and equitable. Correct. And that, I thought, was the DJ that you were seeking, right? I'm sorry, that was what? The declaratory judgment. That's correct. I still had confusion about what the declaratory judgment was to declare. But you want to say it declared you had a right at the table. That's it. So we were first asking that, and then we said that ultimately this would proceed to an arbitration. That's right. But your argument now is almost the exact opposite, which is that the question whether you are entitled to a seat at the table is ruled by the CBA, and therefore it's a minor dispute. But, Your Honor, it's also ruled by McCaskill Bond. There's sort of two things going on here. There's the overarching McCaskill Bond law. Okay. So question. Did the judge have jurisdiction to say McCaskill Bond does not give you blanket rights to participate in the ISL? Yes. Okay. But he did not have jurisdiction to say I'm going to evaluate the ISL and determine that it's fair and equitable. I got you. That's my error. Okay. Let's talk about the separation agreement. My understanding is that there's been a new development, and basically the court has ordered both of you to perform on a perceived agreement. Is that correct? There is a whole other issue with that, Your Honor. Okay. But that issue is in front of us, too. Not that issue, but the voluntary separation is part of this case. Is that still – is your position that that is root, or that's in front of us still? It's in front of you still. So there's two different VSPs that are going on here, and there's two different analyses. One is under the FlexJet side, it's very clear there's no status quo, and we can go out unilaterally and change work rules and offer the VSP to the FlexJet pilots. There's nothing that prohibits that. Judge Gwynne didn't address that issue at all, the status quo. He lumped the two together, which is inappropriate. When you argued, did you argue separately for each group? We did. We did. We said there's two different issues. One is the FlexJet side that has no status quo, and the union admitted there's no status quo. They said that in their brief to you, that there's no status quo, and the carrier could absolutely go off on that. And then the matter that was recently decided, did that apply to both groups? It did under his order. So that order was recently issued, and honestly we're still deciding what to do with that order, because it's still within the time period to appeal. That was just a few days ago. The order here, I just want to make sure I recall correctly, here he ordered to bargain on both of those? He said he enjoined the offer and said you've got to bargain on this. He did. He declared to be a major dispute, that it was not covered by the CBA, and to go bargain on both. He committed error on the FlexJet side, because there is no status quo, and the cases are clear. If you look at Williams v. Jackson Terminal, a number of those cases, it's clear that the carrier can actually go and change those rules and does not have to bargain with them. And what is your claim of error with respect to the other? So on the other, there are a number of cases that we cited on page 42 to 44 of our brief, where the courts have found that in this instance, even if there's not a specific contract revision, it would be an implied term under the management rights to go out and offer these VSPs. So we believe that's a minor dispute as well under Soo Line and a number of other cases that we cited in there. There's been a handful of cases that have held very similar issues, very similar issue to ours, that that is a minor dispute, even though there's not a specific provision allowing for it. Okay, but isn't that a matter for arbitration? Yes. And so if they dispute it, what would happen is they file a grievance, and it goes to arbitration. They went to federal court and said, judge, rule on the merits of our dispute instead. If it were to be a minor dispute, the resolution to that would be, Judge Gwynne didn't have jurisdiction to order us to go do anything on it. It would go back, and our right to take that move would be dealt with in a grievance to the system board as a minor dispute. That would be the resolution to that. Could I clarify one thing? It seemed that Judge Gwynne, I said earlier, you know, Judge Gwynne had, the hook he used to elevate what otherwise seemed like minor disputes into major was the joint CBA, the newly negotiated JCBA. And I don't know what your answer was to that, because that seemed to be the hook. Get it all into federal court and jurisdiction of Judge Gwynne. So A, there is no JCBA. There is the Flight Options 2010 CBA. The process hasn't actually started negotiating. But is it sort of insisting that there be a new JCBA, and where do you stand on that? Ultimately, there will be one, but it doesn't spring forth and apply to the flex jet pilots ad hoc. In this order that just came out, Judge Gwynne has gone too far in that, because the union has said in their brief that there is no status quo, and that CBA does not apply to the flex jet pilots. They said it in their appellate brief on page 47. So there is no CBA over there, and that doesn't change it into a, doesn't turn it into a major dispute. But it seemed to be, it got to be a JCBA somehow in the ordering. Ultimately, there will be a negotiation over one, but essentially what the flight options contract contemplates, and this is contained within it, it's nothing new, it's contained within there, but it essentially makes a place for the flex jet pilots to ultimately be folded in. But it doesn't spring forth and apply to them. And Judge Gwynne, in his recent ruling, I think has committed an error in that regard, in saying that why aren't they being paid by the 2010 pay rates and all that, which is not at all what that agreement contemplates. Well, I mean, you can say that it's not time for the JCBA yet, but if the unions write about that they fulfill their obligations with respect to the ISL, then that time has come. It sets out the steps, and that's proceeding forward. That's actually, the JCBA negotiations are ultimately proceeding. They are proceeding. And then with respect to the flight, the flex jet, if you are in a state of negotiations, and I don't know that they argue this below,  doesn't that in itself mean that they should maintain the status quo? No, and that's a common, for people that do more of the NLRA work, that's actually an unfair labor practice. You're required to do that under the Railway Labor Act. The cases that we cited, Wheeling Regional Airline Pilots Association, the number of cases, they're on page, I think, 42 to 44 of our brief. I'm sorry. There are a number of cases that say there is no status quo, even in the midst of your negotiations. So once you start negotiating, you are allowed to make unilateral changes. That's absolutely clear, because the Railway Labor Act prohibitions only apply to status quo for a collective bargaining agreement, when an agreement is in place. But until there is an agreement in place, there are no cases that say you're prohibited from making unilateral changes until you get to an agreement. I think what Judge Gwynne, one of his errors here is delving into minor disputes and concluding them and saying, this is who I agree with. So the proper remedy here is to send you to arbitration. Yes, it is. And for the FlexJet side, that be reversed and remanded because there is no status quo and that doesn't go to arbitration because there is nothing to arbitrate on the FlexJet side. There is no CBA. Remand? You said reverse and remand. Reverse and render, I'm sorry. You mean vacate? Vacate. You're saying on the FlexJet side, with respect to the VSP, there's just nothing for the courts to do because they're not covered by the statute? This has come up before. So for example, there's a regional airline pilot's case in the 9th Circuit. The new union gets elected. The parties sit down and start negotiating a new CBA. The company changes one of its payrolls over how tips are done. And the union goes to court and says they have to sit down and negotiate with this. They can't go out and just do this. And the 9th Circuit said yes, they can. There's no prohibition in the Railway Labor Act that the company can't make changes to the CBA. Make changes to the work rules and conditions because the Railway Labor Act only kicks in and gives a status quo when there's a CBA in effect. And so the remedy or the right under the FlexJet pilots is not to go arbitrate. It's not to have the intervention of the federal court. The carrier is allowed to make a unilateral change. We really don't know why Judge Quinn lumped them together. His ruling was very unclear. So why shouldn't we just remand and tell him we don't know why you did this. Look at it and tell us why you did it. I think the appropriate thing because from the record it's extremely clear that FlexJet has no CBA. And the union did not dispute that there was no status quo there. That's the end of the inquiry. We get to make the unilateral change. There's no more finding that needs to be done on that. And then the final two points, under Norris LaGuardia there's certainly not the need for an injunction here. It's certainly not required under Norris LaGuardia. The case could have proceeded to arbitration. There was no need for an injunction to be issued. And then the final point is the court found that the parent companies were carriers. The court didn't find that. The court looked at the agreement that the parent companies had voluntarily become parties to. But they're still not a carrier. There's a parent letter that binds them but that doesn't make them a carrier under the Railway Labor Act. They are subject ultimately to the agreement but they're not subject to the Railway Labor Act because they're not carriers. It defines it and sets out what a carrier is. It has to be providing transportation by air. This is just a holding company. But what's the consequence of that? If they're part of the agreement, why can't the judge include them in the order? It was specifically with the issue of finding them to be carriers. It was kind of a narrow issue. One other question. Why was the injunction improper on the VSP on the other side? Because that was a minor dispute. It should not have been enjoined. We should go back and arbitrate the issue. And the carrier is allowed, if it's a minor dispute... Wait, would you be doing interest arbitration or grievance arbitration? Grievance arbitration. If it's a minor dispute, the carrier is allowed to implement the rule or whatever the change is. The carrier is actually allowed to implement that while the dispute is pending. The only reason you're able to say it's a minor dispute is because you believe that the collective bargaining process wasn't triggered. No. I believe it was a minor dispute because the collective bargaining agreement actually covers it in section 2. Management rights section 2. And it doesn't violate any of the other provisions. For example, they said you have to go through the furlough. It violates furlough. It doesn't violate furlough. It can come alongside and work in parallel with furlough. In fact, we were trying to avoid a furlough with it. In the past, you did arbitrate this, right? The VSP issue? No. Never. I don't mean this issue. You did negotiate. Maybe it was a negotiation. The VSP issue. Years ago, there was a negotiation over that issue and an LOA reached it. I know you made reference to Judge Gwinn's recent ruling. What other matters are out there pending right now? I know there was an arbitration proceeding or something that was scheduled on the date of this argument. One party sought to continue the argument. What's still out there? What other things do we need to know about? There's a number of other grievances out there pending. That would be at least germane to our consideration. For example, this Court's decision on the ISL is important because that triggers the interest arbitration and negotiations to commence for the integrated agreement. If this Court sets aside the ISL, that would conceivably be under the contract a sequence of events. Ultimately, however long from now. Under the airlines, it does tend to take forever. It takes a long time. There's a lot at stake and you want to get it right. If the ISL changes, let's say we go back and arbitrate the ISL and it changes what it is, that potentially changes negotiations. That changes maybe what the positions are that the parties take on the bargaining on what we need to do to incorporate these people or these people. If the ISL ultimately is changed, it may change the parties' positions in bargaining. The matter that was set for today, has that been rescheduled? We're in the process of rescheduling and I think we're exchanging dates. Arbitrator Ishin, that's a subcontract charter issue dealing with scope. That's normal that those kinds of cases proceed. Thanks. We asked a lot of questions, but you'll still have your rebuttal time. Thank you, Judge Cole. May it please the Court, James Petroff, Barkin Meislish representing the IBT Airline Division as well as Teamsters 1108. I want to thank the pilots in the back of the room who came to support us from the unions, the NHS Association of Shared Aircraft Pilots, the Teamsters from Flightjet and Flight Options. We also have the Airline Pilots Association represented. We thought that it might be rather easy for them all to get here. Lunkin Airport is crowded with your folks. They have that part down. This is new to them, though, and sort of new to us because with this particular employer, this is the third time we've been to federal court for firing union supporters, getting people their job back. We won a couple times with Judge Gwynn. This is very, very difficult for us to deal with. I have to clear the air on some of the things that opposing counsel has said here because the court has some really important questions about this case. One is the very basic question that both Judge Cook and Judge White were asking. We are only here on this item because the union had their committees to integrate the list. Okay, so counsel, let me just ask you a question. Why isn't, on that issue, why isn't the proper remedy that you arbitrate the issue, not the ISL, but the issue whether you are required to involve them in the ISL? Because it seems to me that that's a matter of contract interpretation. Well, Your Honor, the answer to that is no, because the contract expressly says This is a contract that's only with flight operations. With flight options, right? But it necessarily reminds you it necessarily affects both pilot groups because when you put the flex jet list together, flight options list, and the flex jet, which is the formerly non-union that we represent, it's going to affect where their position is. Okay, they're both on the list. And the contract says absolutely clearly that the company shall accept the list. It says that this is a union... No, but that is an issue that you go to the arbitrator and you say look at the contract. It's as clear as day, if you believe it is, they accept our list. Well, Your Honor, this court let me back up for one second the declaratory judgment action they filed was to prevent us from going to arbitration. It was a stay of arbitration. That's what they asked for. Under AT&T Broadband, which is Richard Posner What was the reason for wanting to do that? Was it this new law? They claim, unprecedented in the industry and anywhere in the court of law that the federal judge has to rule on McCaskill Bond prior to any arbitration. Judge Posner says that type of anti-arbitration stay is sanctionably frivolous. What we did is we filed automatically for a TRO because the company has always been and as Judge Gwyd has recognized in the most recent decision just delaying everything. Their lawsuit under McCaskill Bond was a monkey wrench to stop us forever getting a contract because they want to decertify us after the two year NMB National Mediation Board certification rule. We can't have an election for two years. That expires in December 2017. So all they want to do is embroil us in litigation over this integrated list, even though the contract says you shall accept the list. Now, to Judge Gwyd's question, which is really important Is that conflicting though, that you shall accept the list with the law that says you must ensure that it's fair and equitable? Well, mind you, McCaskill Bond which incorporates Allegheny Mohawk that standard 3 and 13, that's an arbitration statute. That's all it is. If there's any questions about the list, it goes to an arbitrator. Now, for purposes of them You say the two work together. The contract provision and the law work together in arbitration. The law that says thou shalt make sure it's fair and equitable. McCaskill? McCaskill Bond makes Allegheny Mohawk arbitration, which applies both to union and non-union environments all around the country for airlines. Yeah, that's an entire different animal from grievance arbitration by the way. And it's probably not subject to the minor dispute doctrine, right? Because minor dispute doctrine goes to the System Board of Adjustment under the Railway Labor Act and they have the exclusive jurisdiction. This is a different type of arbitration. Statutory arbitration. And it's mentioned in the contract under 1.5C1 and for our purposes we tried to go to arbitration because the company would not accept the list under the contract. We filed for Allegheny Mohawk. They filed for a stay of arbitration. They have always argued through Judge Gwynn. They have argued in their papers and before him in the transcript that we shouldn't be going to arbitration. Now we're before you and they're saying they want to go to arbitration. But the point of the matter is, although opposing counsel has said this RLA cases don't come up too much, the fact of the matter is under the Wheeling case, which is this Court's most recent decision when you talk about shall, Wheeling versus Lake Erie shall means shall. They shall accept the list. What they've done is ceded the authority to the union to come up with the list amongst the committees and give the list to the company. They will accept the list and that triggers the interest arbitration. You have a CBA that says that the agreement is to follow the Teamster policy. Yes. Okay. There is no Teamster policy. Well, there is. There's evidence in the record that there was a de facto policy. Correct. Yes. The allegations that they've made in the brief are incorrect. Now mind you in this case, Your Honor, and I'm sorry for interrupting. Well, it would be useful if you answered my question. Is there a Teamster policy? Yes. And can you tell me where we find that in the record? It's in the transcript of the testimony, our expert testimony from Frederick C. Dubinsky. He testified about what the policy of the Teamster is and how they have emulated the Apple policy in the industry. His testimony was unrebutted. The management in this case, to show the perfunctory nature of their case... Can you give me any more direction in the record? Well... Just look for the experts of Dubinsky's deposition. The actual site... Yeah. With respect to the record page ID 1129. He said the Teamster policy is they accepted or adopted the good parts of the Alpha merger policy, which is prevalent in the United States and has been for decades. And that's how the industry... He testified of what the industry does here, which is the companies accept the list. They stay out of the merger process. Okay. So... you've got a contract that says that they are to accept the list. Yes. And the statute applies when there is not... where it's not otherwise provided for, right? Or unless otherwise provided for, there's this... Well, McCaskill-Bond... Although they're saying McCaskill-Bond trumps the contract, the express language... This is why this is a frivolous case. I thought they were saying it worked together. You and I just talked about that. Well, you know... You finish. I'm sorry. Yeah, yeah. I'm sorry. If I didn't understand your question, Your Honor. But McCaskill-Bond in grabbing and incorporating Allegheny-Mohawk says, in Section 2, the requirements of any collective bargaining agreement that may be applicable to the terms of integration involving covering employees of a covered air carrier shall not be affected by the requirements of this section as to the employees covered. It doesn't affect the language in 1.5C of the Teamsters contract at all. Right? Yes. I agree with you. You're proceeding under the contract. You're asserting rights under the contract. Right. So, Your Honor, if for purposes of status quo violation, which this is, and whether the judge abuses discretion, which is a very high standard that they have not met, for status quo violations... Okay, you've heard this argument that it's not... FlexJet's not status quo. Yeah. That... Well, we have always maintained that with respect to that argument, it's totally irrelevant. Okay, what issue are we talking about now? Well, we just kind of changed path. On the flight options... I'm sorry, yeah. On the flight options contract, a status quo violation is when the company unilaterally changes the terms of the contract. It's not even arguable. And that's Wheeling versus Lake Erie. Shall means shall. That means the same thing here. Shall means shall. There's no exceptions. There are no What are we talking about right now? We're talking about the status quo violation of the acceptance of the integrated seniority list. Okay? And if... How is it a status quo violation? Under Wheeling versus Lake Erie, a status quo violation can occur when the company unilaterally changes a term that's clear in the contract. And that's what's happened here. They refuse to accept the list. They have an unconditional obligation to accept it. That's what Judge Gwynne found. And is that an abuse of discretion? You're saying that every violation of the CBA is a status quo violation because by effectively not complying with the written language, you are imposing a new provision. Absolutely not. Absolutely not, Your Honor. What the courts have said at Conrail, the test is whether the manager's position about his interpretation of the contract is obviously insubstantial. It's basically a frivolous argument. And when you have an if-then statement, like there shall be a conductor in Great Lake on every train or here, they shall accept the list. If it's an if-then statement and they're saying that they don't have to comply with that if-then statement, just for them saying it doesn't turn it into arguably justifiable. Rather, it's frivolous. Are you talking about the frivolous doctrine right now? I just, you're jumping all over and I'm not following you. I'm sorry. I apologize. With respect to the integrated seniority list, the employer has to accept the list. It says it shall accept the list under the contract. You're saying the contract that the contract says that you have a right to follow the union procedure, I'm sorry, the Teamster procedure, and they have to accept it? Yes. Okay. And I was asking you, since that is a dispute that is covered by the contract, why isn't it a minor dispute? Because they have refused to follow the contract. Their arguments for refusing to follow the contract are obviously insubstantial under Conrail. It is just a unilateral change. It's not a breach. It's a unilateral change of the contract, as you would have under the NLRB law. And that becomes major. And that's what makes it major. I mean, that's what Judge White is asking you. Yes, absolutely. That renders it a major dispute. Or a court problem. A court problem. And that's the same with the VSP. We have language with the Voluntary Separation Program that says for a reduction in force, you follow the... And we're talking not about FlexJet here. Right? Because FlexJet is not bound by status quo without ever having been a part of the union. Your Honor, the status quo obligation is not important with respect to FlexJet because Judge Gwynne found that this was a violation of direct dealing. And that's an unfair labor practice or violation of the RLA in and of itself. Under the BRAC cases, the Brotherhood of... He's citing those cases in the footnote. Yes. And that's in the opinion, which is that's a direct dealing violation since the 1940s. You mean the PID site? Where he differentiated between the two? You know, it's on the left. He's citing the Northern District of Ohio case, which is BRAC. And it's the Chesapeake and Ohio case. And he puts it... I believe it's the last... His case? He's Northern District. No, it was the Toledo case, actually. And it was a 1983 case. And those are direct dealing cases, the BRAC cases. And he rejected the Soo Line analysis. And so on the FlexJet side, even though management can change the status quo, they can't directly deal with pilots as what they've done here. What do you mean by directly deal? Tell them about the option to take money and leave? Is that direct dealing? Individually, doing it around the union when we have a Section 6 notice to bargain with the company. That's what I mean. That's the hook that we say, well, you're supposed to have a joint CBA, which we don't yet have. And we're told by this council that under the Railway Labor Act, until there is a signed agreement, there's no such obligation against self-dealing, for example. There is an obligation against self-dealing, regardless of whether it's a newly unionized environment or not. Absolutely. And that has been the case since the 1940s. So there are arguments about the lack of a status quo on the flex jet side or just have no merit. With respect to both items, which is the seniority list and the voluntary separation program, we have clear language in the contract. They've unilaterally changed it. That is the basis for a Railway Labor Act injunction. And Judge Gwynn's decision was absolutely correct in making those determinations. They are absolutely consistent with this court's analysis. I'm sorry. I don't understand why you still don't have to arbitrate why the arbitrator doesn't get to say the union has every right to do this. Well, the status quo doctrine, which is under the Railway Labor Act, that item, in other words, it is a fundamental agreement or decision by the Supreme Court and Down that you don't have to arbitrate frivolous disputes that the employer has no good faith argument to make. And rather, when the employer does that, and they could breach the entire contract for a whole thing. Which case are you relying on? Conrail. Conrail? Conrail is the lead case that defines what is a status quo violation, which is a unilateral change. And this law, the idea of a unilateral change Who decides whether it's frivolous or not? This court does. Absolutely. And Judge Gwynn did it. And just as in Judge Stranch in her opinion in Wheeling versus Lake Erie case, which is from 2015, the judge said, yes, absolutely. This is a complete rewriting of the contract. And if you're rewriting the contract, that allows the company to violate the self-help rule during the status quo period. Okay, but doesn't Wheeling say that if it's really a major dispute the company can't make a frivolous claim that it's covered by the contract and turn it into a minor dispute? Yes. But that's not what's happening here. Well, I submit that there are claims in this regard, Your Honor. There are claims in this regard that they have the ability to be part of union meetings over the integrated seniority list which would violate the Railway Labor Act surveillance of employees or that they have the ability to pick a representative or argue about that regarding the composition of the flex check committees. That's another thing that would violate Section 2-9 of the Railway Labor Act. There's been no case cited whatsoever that they have any participation in the seniority integration process. The cases that they cite are from the Civil Aeronautics Board, just pure dicta from that. They have no role in the process. Our testimony in the record, which was expert testimony... Hypothetically, and I'm not... I'm trying to give you a chance to tell me why my thinking is convoluted, okay? So, hypothetically, they could have a role. And we know that because the statute leaves open the possibility of arbitrating such an issue. It's a possibility. It's not mandated. It's not a right. It's a possibility. And the reason that doesn't apply here is because you have a contract that says something else. And... So... Where is there a case that says that if the union has a right under the contract when the employer comes in and argues that they don't have that right and they try to stall and do whatever that it's no longer has to go through the proper route of having an arbitrator declare you don't have that right. The union's absolutely right. They did it properly. The next step is to bargain and that's what you do. Where is the case that says that you don't have to follow that procedure? You can go to court. Wheeling. Wheeling absolutely says that. In that case, the facts are almost identical. Change the words. The management in that case was staffing a train with management folks. And the contract said with the BLET a train crew consists of one conductor. They weren't staffing the train with one conductor. Management said this all should go to arbitration because the contract is silent. It really doesn't expressly say that we can't use management folk to staff the train. Judge Stransch in her opinion said this presents a major dispute because the language is clear. The language is unambiguous. Is this the frivolous business? Yes. This case is not going to go to arbitration as what the management wants. It's not a minor dispute. It's a major one. Which is exactly the situation in this case both with respect to the seniority list and the VSB. It's clear. Both of those situations the company is just doing what it wants as opposed to what's in the contract. And it's not just has some arguable case in the contract that it's a breach where we'll hash it out at a system board of adjustment. It's absolutely clear. And that's what Judge Gwynne found. Now we had in this case abundance of testimony. Management did not put on a single shred of evidence. All of this is credibility from our witnesses with the judge was entitled to find. Entitled to realize and entitled to rely upon. So I think with respect to in the big picture we had the company, the CEO of the company Ken Rickey and we put either caught on tape where he testified where he told all the pilots his interpretation of the contract the company's interpretation on how everything would merge. We played that for the judge. Sounds like dirty pool. Well he gave the tape to everybody. But you know you're caught on tape. He said the first order of business in a seniority aggration is the union integrates the list. Right? The union integrates the list. And that was him defining exactly, you can see this in the record the union's position here. Now they've taken a different tack because they want to delay us from ever getting a contract. But I know my time has expired a long time ago but I would just like to say for all the pilots in the room they want to get a contract with this employer. That's all we've ever done. And the roadblocks that have been thrown up as recognized by Judge Gwyn in two court orders are absolutely This is not a legal argument. You're on the stage for your colleagues. That's not right. That's not what we're here for. You know your honor, on both of these points with respect to the status quo, which I was going to segue into I thank you. Fundamentally, those are both questions of huge importance under the Railway Labor Act. The doctrine that management cannot change the contract midterm. For our purposes, this is the central design according to Detroit Shoreline. Management cannot engage in self-help by changing the contract and we can't strike. But as to Flex Jet your position is different. It's that it becomes direct dealing? Yes. And I think if you read those BRAC cases that we cited in our brief, your honor it will clearly show to you that direct dealing like this factually indistinguishable offering a lump sum payment even without just talking. In this case, the evidence is in the record about how the company had individual agreements with people. It's an in around the union. As the exclusive representative of this group, we're voted in. They may not like it, but the NMB has voted us in and we represent them. They don't represent Flex Jet pilots, either for the SLI or for the VSP. We represent them. They can't go around our back because when they do that, they undermine the union now and forever. If you imagine a lawyer I'm not going to go and the other attorney says I'm not going to deal with you, I'm going to deal with the client. And we're getting way past your time. I just have a question. So the order that required them to honor an agreement does that have to do with this issue in front of us? I'm not sure what you're referring to, Your Honor. Okay. I could be misreading it, but I thought that the parties were just told that they have to honor an agreement between them regarding the VSP. Oh, the judge's recent order. Yes. Yes, on January the 24th. He found that the company and the union reached an agreement on the voluntary separation program both for flight options and for Flex Jet. And he said that they reneged on it. They refused to sign it. He's ordering them to sign it as a matter of Railway Labor Act law just like under the NLRB. So the company's ordered to sign that agreement. Let's say that that's done and there's no appeal. Does that take care of the VSP issue? You know, I think from our standpoint, I think it does. It's still appealed. The company doesn't think so, I take it. They say they don't think there was a valid order from the district court. Well, that's another case, right? That's a separate order that will be appealed. But I think that the most recent order for our purposes, it's moot. For the court, it's moot. And they can insist on a ruling is a different question. That's all I wanted to know. Thank you very much, Kathy. I appreciate your presentation. Thank you. And just from your standpoint, I'm just curious. That's a whole other issue which you have every right to appeal. But the question is should you decide if you end up not appealing, does that make the VSP issue before us moot? It does not. Because the issue deals with some more fundamental principles. Because right now, on the record, there's Judge Gwynn saying that there is some nebulous status quo or something over at FlexNet. That's not what makes things moot or not. It has to do with what relief you want. It's the same. This has been the first case in history that's held that there's some status quo at a carrier that doesn't have a contract out there. This is an extremely dangerous precedent that we think cannot go. And do you have a case that deals with this particular situation where there's a group of now unionized people who are working under a contract but there's pending negotiations for a CBA? The case is, if I understand your question, the FlexJet pilots are not working under any contract. It's purely company work rules. There is no contract at all and no terms or conditions or anything that applies to FlexJet right now. Once that happens and they are under a contract, then there is some status quo to start from. I'm asking whether your cases that deal that say there's no status quo rule when it comes to non-unionized employees. They become unionized? Do you have a case that applies that to a situation where they are in the process of being represented? All the cases that I've cited in my brief deal with a situation where it was a formally non-unionized group. They elect a representative and then they're at some point and these cases are all at various points of negotiation. Some they've never met. Some they've started negotiations. Some they're in front of the National Mediation Board. Williamson versus Jackson Terminal. They all say that the employer can do whatever it wants. Absolutely. They're very clear on that. Judge White, I think you made a great point about this issue of the contract and the minor dispute and focusing in on that. We've always understood that there is an interpretation involved with 1.5C1. Mr. Petroff cites Wheeling and says Wheeling had a provision in there that said shall. It's unequivocal. He goes down the frivolous argument. Wheeling was different because Wheeling had a provision that says you shall have two people running a train. That's essentially the gist of it. In our case, this section that says you shall accept the list is surrounded by a lot of conditions precedent. It goes through all these processes and then it does all this and it goes through Allegheny Mohawk 3 and 13. It's got to be fair and equitable. Then it says it can't cause a system flush. It can't cause any pilots to be displaced. It has a lot of conditions on it. You accept the list is subject to all those conditions. It's different than Wheeling because in Wheeling there was just an unequivocal you shall and nothing else. I want to make sure you answer any questions that Judge White or Judge Cook would have. But your time has expired. So you do need to wrap up. Do you concede that if it's clear under that section that you have to accept it that it then becomes a major dispute? Actually, no. Here's another point and I think you started down this path perhaps. The carrier has not and you were asking Mr. Petroff some questions about this the carrier has not instituted a change to the contract where we went out and said we are going to now do this differently. Like a work rule? Like a work rule. We didn't go out and change anything. This is all proceeding under the procedure. What we've said is we disagree that this is an appropriate list. There's a disagreement over the interpretation of it. So Wheeling in all these cases enjoying things when the carrier goes out and takes an affirmative action to change the contract and he keeps saying change the contract, change the contract we didn't change the contract. We have a dispute over what this contract means and that is a minor dispute and that has to go down that road. Real quickly on the direct dealing and I'll wrap up. The direct dealing cases that Mr. Petroff cites for his premise involved individual agreements that were specifically negotiated one by one over amounts and basically the pilots would come in and they would haggle over how much the amount was going to be. The cases that I cite, basically it was just a cross the board, here's the deal, come in and get it if you want it. Direct dealing would be you sit down and actually Your cases approve it. Thank you for your time. Thank you very much counsel for your arguments today. I appreciate them. The case will be submitted and you may leave the courtroom if you wish or you may hang around. We're going to administer oath of office to an assistant U.S. attorney. So feel free to leave now if you wish. Thank you. I do. Thanks. Well let me see which one you have. I got the same one. I'll use yours. Yeah.